IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAM DOE, | : | |
| | : | |
| Plaintiff | : | Civil Action No. 20-cv-00023 |
| | : | |
| v. | : | |
| | : | Judge Susan Paradise Baxter/ |
| PENNSYLVANIA DEPARTMENT | : | Magistrate Judge Richard A. Lanzillo |
| OF CORRECTIONS, et al., | : | |
| | : | |
| Defendants. | : | Filed via Electronic Case Filing |

## DOC DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

### Background

Plaintiff, Sam Doe[1] ("Doe"), is an inmate currently incarcerated within the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution ("SCI") at Cambridge Springs. On January 28, 2020, Doe, through counsel, filed a complaint alleging a civil rights claim pursuant to 42 U.S.C. §1983, discrimination claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, as well as a state tort claim. *See Document No. 1.* The named DOC Defendants[2] were the DOC, Secretary John Wetzel, former Chief of Clinical

---

[1] Plaintiff filed as "Doe" due to "privacy and safety concerns."
[2] The remaining medical Defendants, Alpert, Alexander, Kross and Obeng, are represented by private counsel.

Services Dr. Paul Noel, Dr. Doe, Superintendent Lonnie Oliver, former Deputy Superintendent Debra Rich, Deputy Superintendent Michelle Wagner, Psychological Services Specialist Katie Blakely and Corrections Health Care Administrator Shannon Anderson. *See Document No. 1*.

On June 20, 2020, Doe filed an amended complaint, naming the same DOC Defendants, with the addition of Chief Psychiatrist Dr. Palukuri Reddy (Dr. Doe). Doe again asserted ADA, Rehabilitation Act and state tort claims; the amended complaint includes claims under the Fourteenth Amendment. *See Document No. 33*.

In the amended complaint, Doe alleges, *inter alia,* that the DOC's policy regarding transgender healthcare is unconstitutional. Specifically, DOC policy 13.2.1 Section 19, outlines the procedures for the diagnosis and treatment of individuals with gender dysphoria ("GD"). Pursuant to this policy, the Gender Dysphoria Treatment Review Committee ("GD Committee") reviews and approves individual treatment plans for individuals diagnosed with GD, including requests for gender confirmation surgery. *See Document No. 33*.

For some individuals diagnosed with GD, gender confirmation surgery is determined to be medically necessary. In other cases, hormone therapy alone will alleviate the symptoms. *See Document No. 33*.

According to the amended complaint, Doe is a non-binary[3] individual diagnosed with GD. Doe received treatment in the form of testosterone hormone therapy that caused unwanted hair growth, prompting their request for a hair removal procedure; this request was denied in June of 2018. *See Document No. 33.*

Subsequently, in October of 2019 the GD Committee denied Doe's request for gender confirmation surgery. Doe alleges an Eighth Amendment claim against Defendants Wetzel, Noel, Reddy, Alpert, Alexander, Kross and Obeng, for their failure to provide medically necessary, including access to a transgender healthcare specialist, hair removal, and gender confirmation surgery. *See Document No. 33.*

With respect to their claim for intentional infliction of emotional distress ("IIED") against DOC Defendants Rich, Wagner, Oliver, Blakely and Anderson, Doe alleges that in "early 2018" Defendant Anderson discussed Doe's GD and testosterone treatment at their cell door. Other inmates allegedly overheard this conversation, following which inmates and staff members began to harass Doe. When Doe reported the harassment to Defendants Rich, Wagner and Oliver, they chose not to take any disciplinary action against those involved and denied Doe's

---

[3] Doe's preferred pronouns are "they/them."

requests to move from the housing unit where the alleged harassment occurred. *See Document No. 33*.

Along these lines, Doe alleges a Fourteenth Amendment right to privacy claim against Defendants Blakely and Anderson. The claim against Anderson is based on the above-indicated actions. With respect to Defendant Blakely, Doe alleges that when discussing their act of self-harm, the door to her office was closed and no other inmates were close enough to hear their conversation. Following their discussion, Blakely asked Captain Deal to escort Doe to the medical department. Although they did not inform anyone else about this incident, Doe claims they were subsequently harassed by other inmates about it. *See Document No. 33*.

Regarding Doe's discrimination claims against the DOC pursuant to the ADA and the Rehabilitation Act, they allege they require a private restroom and "fear harassment and abuse from potential cellmates" while changing and sleeping. Doe alleges they were forced to reside in a double cell and their request to be celled with the individual of their choice was denied. Presently Doe is housed with individuals with whom they feel safe, but they fear they could potentially be reassigned to anther cell. Further, Doe alleges they require more frequent access to a better equipped gym. Lastly, Doe cites to the denial of their requests to purchase men's sleeveless undershirts and other unspecified commissary items. *See Document No. 33*.

4

As relief, Doe seeks declaratory and injunctive relief. Additionally, Doe requests compensatory and punitive damages, as well as attorney's fees. *See Document No. 33.*

### Statement of the Questions Presented

A. Should Plaintiff's claims against the DOC pursuant to the Americans with Disabilities Act and the Rehabilitation Act be dismissed for failure to state a claim?
(Suggested Answer: Yes)

B. Should DOC Defendants Rich, Wagner, Oliver, Blakely and Anderson, be dismissed from this case because Plaintiff failed to state a claim for intentional infliction of emotional distress?
(Suggested Answer: Yes)

C. Should the Fourteenth Amendment claim against Defendant Blakely be dismissed due to her lack of personal involvement?
(Suggested Answer: Yes)

### Argument

Rule 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. Although a complaint attacked by a motion to dismiss does not require detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007). A civil

rights complaint is adequate where it states the conduct, time, place, and persons responsible. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *citing*, *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980).

When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff. The motion should be granted if it appears to a certainty that no relief could be granted under any set of facts which could be proved. However, the court need not credit either bald assertions or legal conclusions in a complaint when deciding a motion to dismiss. *Evancho*, 423 F.3d at 353.

### A. Plaintiff's claims against the DOC pursuant to the Americans with Disabilities Act and Rehabilitation Act should be dismissed for failure to state a claim.

As a preliminary matter, the Third Circuit has stated that the ADA and Rehabilitation Act "are all to be interpreted consistently, and that all have the same standard for determination of liability." *Macfarlan v. Ivy Hill SNF, LLC,* 675 F.3d 266 (3d Cir. 2012), *citing McDonald v. Pa. Dept. of Pub. Welfare, Polk Ctr.*, 62 F.3d 82 (3d Cir. 1995); *Donahue v. Consol. Rail Corp.*, 224 F.3d 226 (3d Cir. 2000).

To state a discrimination claim under these Acts, a plaintiff must allege that he is a qualified individual with a disability, who was excluded from participation in

6

or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity by reason of that disability. *Kokinda v. Pennsylvania Dep't of Corr.*, 2019 WL 2576391, at 4 (3d Cir. June 24, 2019), *citing Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018).

> 1. *Gender dysphoria not resulting from a physical impairment falls within the exclusionary language of the ADA.*

Section 12211 of the ADA states, "[u]nder this chapter, the term "disability" shall not include—(1) transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, *gender identity disorders* not resulting from physical impairments, or other sexual behavior disorders…" 42 U.S.C. § 12211(b) (emphasis added).

"Among the courts who have discussed the issue, there is significant disagreement whether gender dysphoria falls into the ADA's categorical exclusions." *London v. Evans,* 2019 WL 5726983 at 6, n.3 (D. Del. November 5, 2019), *citing Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 753-54 (S.D. Ohio 2018) (GD not resulting from physical impairment is within the ADA's exclusionary language); *Michaels v. Akal Sec., Inc.*, 2010 WL 2573988, at 6 (D. Colo. June 24, 2010) (GD is a gender identity disorder and therefore excluded); *Blatt v. Cabela's Retail, Inc.*, 2017 WL 2178123, at 3 (E.D. Pa. May 18, 2017) (GD resulting in substantial limits on major life activities falls outside the ADA's exclusionary language); *Doe v. Massachusetts Dep't of Corr.,* 2018 WL 2994403,

7

at 6 (D. Mass. June 14, 2018) (distinguishing between gender identity disorder and GD, suggesting that there *may* be a physical etiology underlying gender dysphoria sufficient to take it out of "not resulting from physical impairments" category).

A Pennsylvania Eastern District court's decision in *Blatt*, holding that GD does not fall within the exclusionary language of the ADA, has been questioned and expressly disavowed by other courts faced with this issue, including *Parker, supra,* and *Doe v. Nothrop*, 418 F.Supp. 3d 921 (N.D. Ala. October 22, 2019).

In *Parker* the court specifically discounted the decision in *Blatt*, indicating it:

> can find no support, textual or otherwise, for the *Blatt* court's interpretation. *The exclusion plainly applies to all "gender identity disorders not resulting from physical impairments,"* without any regard to whether the gender identity disorder is disabling. Further, whether a condition is "disabling," according to the *Blatt* court, depends on whether the condition substantially limits one or more major life activities. But limitation of major life activities is a requirement for *all* conditions qualifying as a "disability" under the ADA. 42 U.S.C. § 12101(1). Thus, gender identity disorders that do not substantially limit a major life activity are already excluded from coverage, and an additional exclusion for any non-disabling condition would be superfluous.

*Parker,* 307 F.Supp.3d at 754 (emphasis added); *see*, *e.g.*, *Daniel v. Cantrell*, 375 F.3d 377, 383 (6th Cir. 2004) (courts should "avoid interpretations of a statute which would render portions of it superfluous.").

As such, the *Parker* court concluded that Congress intended to exclude both disabling and non-disabling gender identity disorders that do not result from a physical impairment, noting that "[t]he majority of federal cases have concluded as

8

much." *Parker,* 307 F.Supp.3d at 754; *citing Gulley–Fernandez v. Wisconsin Dep't of Corr.*, 2015 WL 7777997, at 2 (E.D. Wis. Dec. 1, 2015); *Mitchell v. Wall*, 2015 WL 10936775, at 1 (W.D. Wis. Aug. 6, 2015); *Diamond v. Allen*, 2014 WL 6461730, at 4 (M.D. Ga. Nov. 17, 2014); *Kastl v. Maricopa Cty. Cmty. Coll. Dist.*, 2004 WL 2008954, at 4 (D. Ariz. June 3, 2004).

Moreover, in *Parker* the plaintiff did not allege that her GD was caused by a physical impairment or that GD always results from a physical impairment. The court was "not convinced that a mere difference in brain structure or physiology, by itself, is necessarily a "physical impairment"—it may have physical underpinnings in the brain, but not every physical difference between two groups implies that one of the groups is impaired in some way." *Parker*, 307 F.Supp.3d at 755.

Along these lines, citing to *Parker,* the court in *Doe v. Nothrop* concluded "that a condition of 'gender dysphoria' (formerly described as a 'gender identity disorder') that does not result from a physical impairment is expressly excluded from the definition of disabilities covered by the Americans with Disabilities Act." *Nothrop*, 418 F.Supp. 3d 921 at 930; 42 U.S.C. § 12211(b)(1). The court indicated that the cases relied upon by the plaintiff, namely *Doe v. Mass. Dept. of Corr.*, 2018 WL 2994403 (D. Mass. June 14, 2018) and *Blatt, supra,* "are not binding upon this court, and they are not persuasive." *Id.*

9

The *Nothrop* court further expounded upon this point, stating the plaintiff's contention that GD is not specifically excluded by the language of 42 U.S.C. § 12211(b) "overlooks the fact, however, that 42 U.S.C. § 12211(b) has not been amended since it was enacted on July 26, 1990" despite the fact that the term used in the statute, "gender identity disorders," was replaced in 2013 by the Fifth Edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders with the term "gender dysphoria." *Nothrop,* 418 F.Supp.3d at 929. "Accordingly, the terms 'gender identity disorder' and 'gender dysphoria' are legally synonymous for purposes of the present motion." *Id., citing Parker, Gulley-Fernandez, supra*. *See also Michaels v. Akal Security, Inc.*, 2010 WL 2573988, at 6 (D. Col. June 24, 2010) ("Gender dysphoria, as a gender identity disorder, is specifically exempted as a disability by the Rehabilitation Act [of 1973, 29 U.S.C. § 701 *et seq.*]," which contains exclusionary language that is identical to the ADA).

Thus, since Doe's GD diagnosis falls within the exclusionary language of these Acts, the claims against the DOC must be dismissed.

2. *Even assuming that gender dysphoria falls outside the Acts' exclusionary language, Plaintiff's claims fail on the merits.*

To state a claim under the ADA or Rehabilitation Act, Doe must demonstrate they were excluded from a program or service as a result of their diagnosis of GD. *See London*, 2019 WL 5726983 at 6 (although the complaint alleged the plaintiff

had a disability (gender dysphoria), there were no allegations that the plaintiff was excluded from a DOC program or service *because of* a disability; therefore, the ADA claim was deficiently plead and the complaint was dismissed as frivolous).

In the present case Doe alleges: they require privacy when using the restroom; they fear harassment from "potential cellmates while changing and sleeping"; they were double celled and their request for a particular cellmate was denied; they fear they will be removed from their current housing assignment where they feel safe; they desire increased time in a better equipped gym; and their requests to purchase men's sleeveless shirts and other unspecified commissary items were denied.

These allegations do not state a claim that Doe was denied access to any prison services or programs *because of* their GD diagnosis. Their bald assertions that the DOC discriminated against them, are insufficient to state a claim under either Act.

Speculative future issues with *potential* future cellmates and issues regarding housing assignments do not state a cognizable claim. *Mattis v. Dept. of Corr.*, 2017 WL 6406884, at 16 (W.D. Pa. December 15, 2017); *Riley v. Grainey*, 2015 WL 5693805, at 3 (M.D. Pa. Sept. 24, 2015) (finding that the inmate failed to adequately plead that he was denied the benefit of a specific prison service, program, or activity as a result of the defendant's failure to accommodate him with a single cell). Likewise, Doe's averments regarding their desire for access to additional gym

equipment and commissary items, fail to establish they were denied access to any programs or services *due to* their disability.

Furthermore, a plaintiff's failure to assert the GD resulted from a physical impairment, will be "fatal to plaintiff's ADA claim." *Nothrop*, 418 F.Supp.3d at 930, *citing Parker*, 307 F.Supp.3d at 754-55; *see Fromm v. MVM, Inc.*, 371 Fed.Appx. 263 (3d Cir. 2010) (pursuant to both the ADA and the Rehabilitation Act, the plaintiff "must prove that he has a physical impairment that limits a major life activity, has a record of such impairment, or is "regarded as" having such an impairment."). In the present case, Doe failed to allege facts to establish their GD resulted from a physical impairment. *See Nothrop, Parker, supra.*

Therefore, Doe failed to state a claim under either Act, and these claims against the DOC must be dismissed.

**B. DOC Defendants Rich, Wagner, Oliver, Blakely and Anderson should be dismissed from this case because Plaintiff failed to state a claim for intentional infliction of emotional distress.**

The Third Circuit has observed that under Pennsylvania law, in order to prevail on a claim for IIED, the plaintiff "must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff." *Mattis*, 2017 WL 6406884, at 16, *citing Reedy v. Evanson*, 615 F.3d 197, 231-32 (3d Cir. 2010), *quoting Swisher v. Pitz,* 868 A.2d 1228, 1230

(Pa. Super. 2005). Further, "a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct." *Id.* Accordingly, liability on a claim for IIED "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Field v. Phila. Elec. Co.,* 565 A.2d 1170, 1184 (Pa. Super. 1989).

As a preliminary matter, to the extent that Doe's claims involve allegations of intentional conduct or negligence under state law, DOC Defendants are entitled to the affirmative defense of sovereign immunity. Pa.R.C.P. 1028(a)(4); 42 Pa. C.S. § 6602; Pa.R.C.P. 1030; 1 Pa. C.S. § 2310; 42 Pa.C.S. § 8522; *La Frankie v. Miklich*, 618 A.2d 1145 (Pa. Cmwlth. 1992).

The Third Circuit has determined that Pennsylvania's sovereign immunity doctrine applies to both negligent and intentional torts, which includes intentional infliction of emotional distress asserted against officials in their individual capacities. *Rosa-Diaz v. Dow,* 2015 WL 1061165, at 9 (W.D. Pa. March 10, 2015) *affirmed,* 683 Fed.Appx. 103 (3d Cir. 2017), *citing Kidd v. Pennsylvania,* 37 F. App'x 592 n. 3 (3d Cir. 2002). In the present case, Doe's claims for IIED, based on actions taken by these named DOC Defendants within the course of their duties, are barred by sovereign immunity. *See Rosa-Diaz, Kidd, supra.*

Further examination of the factual basis for Doe's allegations leads to the conclusion that the claim fails on the merits as well. Doe failed to present any facts to indicate Defendants' conduct was outrageous, extreme, atrocious or otherwise utterly intolerable in civilized society. *See Reedy, Field, supra.* In fact, Doe did not present any facts that would demonstrate the alleged actions were outside the parameters of their discretion as prison officials or otherwise outrageous in character. *See Bell v. Wolfish*, 441 U.S. 520 (1979)*; McKune v. Lile*, 536 U.S. 24 (2002); *Bronson v. Central Office Review Committee*, 721 A.2d 357 (Pa. 1998). Moreover, Doe's failure to plead facts to establish they suffered physical harm as a result of the Defendants' actions, is fatal to their claim for IIED. *See Reedy, supra.*

Thus, since Doe has failed to state a claim for IIED, Defendants Rich, Wagner, Oliver, Blakely and Anderson should be dismissed from this action.

### C. The Fourteenth Amendment claim against Defendant Blakely should be dismissed due to her lack of personal involvement.

Individual government defendants in a civil rights action must have personal involvement in the alleged wrongdoing. Personal involvement may be shown through allegations of personal direction or of actual knowledge and acquiescence. Liability cannot be predicated solely on the operation of respondeat superior. *Evancho*, 423 F.3d at 353; *citing*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d

Cir. 1988). The plaintiff must plead each named defendant through his own actions violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Brickell v. Clinton County Prison Bd.*, 658 F. Supp. 2d 621, 625 (M.D. Pa. 2009).

Doe did not present any facts to indicate Defendant Blakely personally disseminated or otherwise failed to properly safeguard their medical information. In fact, the allegations in the complaint directly contradict and undermine this contention. Namely, Doe avers the door to Blakely's office was closed while they discussed medical information and no one else was in a position to hear their conversation. Following this conversation, Doe was escorted to the medical department by another staff member.

Doe failed to plead any facts concerning to whom Blakely allegedly provided this information, how or when; thus, the complaint is devoid of any facts to establish her involvement. *See Evancho, Twombly, supra.* As such, Defendant Blakely should be dismissed from this action due to her lack of personal involvement in the alleged constitutional violation.

## Conclusion

**WHEREFORE**, Defendants, the DOC, Rich, Wagner, Oliver, Blakely and Anderson, respectfully request that the Motion be granted and that these Defendants be dismissed with prejudice.

                                        Respectfully submitted,

                                        Office of General Counsel

By:   /s/ Kelly J. Hoke
        Kelly J. Hoke
        Assistant Counsel
        Attorney I.D. No. 202917
        Pennsylvania Department of Corrections
        Office of Chief Counsel
        1920 Technology Parkway
        Mechanicsburg, PA  17050
        (717) 728-7749
Dated: June 25, 2020        Email: kelhoke@pa.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAM DOE, | : | |
| | : | |
| Plaintiff | : | Civil Action No. 20-cv-00023 |
| | : | |
| v. | : | |
| | : | Judge Susan Paradise Baxter/ |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., | : | Magistrate Judge Richard A. Lanzillo |
| | : | |
| | : | |
| Defendants. | : | Filed via Electronic Case Filing |

**CERTIFICATE OF SERVICE**

I hereby certify that the within brief has been filed electronically and is available for viewing and downloading from the ECF system by counsel for Plaintiff, and therefore satisfies the service requirements under *Fed.R.Civ.P. 5(b)(2)(E); L.Cv.R. 5.6*.

/s/ Kelly J. Hoke
Kelly J. Hoke
Assistant Counsel
Attorney I.D. No. 202917
Pennsylvania Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA  17050
(717) 728-7749
Email: kelhoke@pa.gov

Dated: June 25, 2020